UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    c/o United States Attorney's Office<br>    Judiciary Center Building<br>    555 Fourth Street NW<br>    Washington, D.C. 20530<br><br>        Plaintiff,<br><br>v.<br><br>REAL PROPERTY LOCATED AT<br>13159 LAKEHILL DRIVE,<br>NOKESVILLE, VIRGINIA,<br><br>        Defendant. | Case: 1:21−cv−00876<br>Assigned To : Kollar−Kotelly, Colleen<br>Assign. Date : 5/4/2021<br>Description: Gen. Civil (E−DECK)<br><br>Civil Action No.:<br><br><u>UNDER SEAL</u> |

## <u>VERIFIED COMPLAINT FOR CIVIL FORFEITURE ACTION IN REM</u>

Plaintiff, United States of America, by and through its attorney, the United States Attorney for the District of Columbia, brings this Verified Complaint for Forfeiture against the real property located at 13159 Lakehill Drive, Nokesville, Virginia, and alleges as follows in accordance with Supplemental Rule for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rule") G(2):

### I.   <u>NATURE OF THE ACTION</u>

1.     This is a civil forfeiture action *in rem* to forfeit all right, title, and interest in the defendant property pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C).

### II.   <u>THE DEFENDANT PROPERTY</u>

2.     The defendant property is the real property located at 13159 Lakehill Drive, Nokesville, Virginia, with all appurtenances, improvements, and attachments thereon, and is more fully described as: Lot 28, section 2, WINDY HILL, as the same is duly dedicated, platted

and reported in Deed Book 1168 at Page 285, among the land records of the County of Prince William, Commonwealth of Virginia.

3. The defendant property is titled in the name of DAVID MARESCA ("MARESCA").

### III. JUDICIAL AUTHORIZATION AND PROCESS

4. Under Supplemental Rule G(3)(a), the United States must comply with the procedures in 18 U.S.C. § 985 when initiating civil forfeiture actions against real property.

5. The defendant property has not been seized. The United States does not seek authority under 18 U.S.C. § 985(d)(1) to seize the defendant property prior to trial. In accordance with 18 U.S.C. § 985(b)(1)(A), the defendant property will not be seized until the entry of a forfeiture order.

6. Upon lifting of the sealing order associated with this Complaint, the United States will:

   a. post notice of this Complaint on the defendant property as required by 18 U.S.C. § 985(c)(1)(B);

   b. serve notice of this action and a copy of this Complaint on MARESCA, the property owner, as required by 18 U.S.C. § 985(c)(1)(C);

   c. send notice of this action and a copy of this Complaint to any person who reasonably appears to be a potential claimant as required by Supplemental Rule G(4)(b); and

   d. publish notice of this action pursuant to the procedures in Supplemental Rule G(4)(a).

## IV. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345, as this is a civil action commenced by the United States; and pursuant to 28 U.S.C. § 1355(a), as this is an action or proceeding for the recovery or enforcement of a forfeiture.

8. This Court has *in rem* jurisdiction pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred within the District of Columbia.

9. Venue in the District of Columbia is proper pursuant to 28 U.S.C. §1355(b)(1)(A) because the acts or omissions giving rise to the forfeiture occurred within the District of Columbia.

## V. BASIS FOR FORFEITURE

10. As detailed below, MARESCA and others have cheated distressed homeowners out of money through a foreclosure rescue scheme in which they promised fraudulently to provide services that would help the borrower victim. MARESCA's conduct was in violation of 18 U.S.C. § 1343 (Wire Fraud) and 18 U.S.C. § 1349 (Conspiracy to Commit Mail and Wire Fraud). MARESCA then used $150,000 of the criminal proceeds from the foreclosure rescue scheme as earnest money to purchase the defendant property. This payment was a monetary transaction in violation of 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived From Specified Unlawful Activity).

11. Based on the facts set forth in this Complaint, there is a reasonable belief that the defendant property is subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), as real property, which constitutes or is derived from proceeds traceable to an offense constituting a specified unlawful activity. There is also a reasonable belief that the defendant property is subject to

forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(A), as real property involved in a transaction in violation of 18 U.S.C. § 1957.

## VI. FACTS

### Background

12. DAVID MARESCA lives at 13159 Lakehill Drive, Nokesville, Virginia. MARESCA is a principal for several different companies involved in the alleged scheme to defraud, including the following:

13. Records obtained by investigators show that SYNERGY ATTORNEY SERVICES LLC ("SAS") was incorporated in the state of Virginia effective April 27, 2015. MARESCA is listed as the sole member with 100% ownership interest.

14. According to records provided by the Government of the District of Columbia, Department of Consumer and Regulatory Affairs Corporations Division ("DCRA"), SYNERGY LAW LLC ("SYNERGY") was a business incorporated in the District of Columbia that listed MARESCA as the govenor. The Articles of Organization for SYNERGY were transmitted to the DCRA in Washington, D.C., via the interstate wires on or about October 17, 2016. SYNERGY also transmitted a Two-Year Report for Domestic and Foreign Filing Entity to the DCRA via the interstate wires on or about October 26, 2017. SYNERGY's certificate and registration was revoked on or about September 12, 2019.

15. SYNERGY filed for bankruptcy in the U.S. Bankruptcy Court for the District of Columbia on or about August 16, 2019. According to testimony provided by MARESCA at a meeting of creditors on October 18, 2019, MARESCA was a 90% shareholder in SYNERGY. The remaining 10% of SYNERGY was owned by Person A, a member of the D.C. Bar whose license to practice law was suspended in or about May 2018.

4

16. Records provided by the Commonwealth of Virginia State Corporation Commission show that SYNERGY STAFFING LLC was a business incorporated in the state of Virginia effective April 11, 2019. MARESCA was the corporation's registered agent and organizer, and listed the company's initial registered office, and the business office of the registered agent, as 13159 Lakehill Drive, Nokesville, Virginia 20181. The company's principal office where the records of the company were to be kept was listed as 8870 Rixlew Lane, Suite #201, Manassas, Virginia 20109.

## The Foreclosure Rescue Scheme

17. According to victim homeowners interviewed during the government's investigation, SYNERGY marketed itself as a nation-wide law firm that could help distressed homeowners stay in their homes. SYNERGY employees told distressed homeowners the "firm" was comprised of a team of highly successful attorneys and mortgage industry professionals who could negotiate loan modifications on the homeowner's behalf within six months.

18. Victim homeowners who retained SYNERGY's services made upfront payments in anticipation of receiving loan modification and foreclosure services from what the victims believed was a law firm retained to represent them. To the contrary, very few of the victim homeowners interviewed ever spoke with an attorney and very few loan modifications were obtained on behalf of those homeowners. In reality, SYNERGY would consistently ask clients for the same information over and over again; consistently provide a new representative to work with the client; and would usually only reach out to the client at the end of the month to verify the processing of payment for "services" purportedly provided to them by SYNERGY.

19. Mortgage records reviewed during this investigation also showed that in some cases, there were significant delays in SYNERGY contacting and providing the required loan

5

modification documents to the mortgage companies and little to no action taken by SYNERGY to renegotiate the mortgages. In other cases, the lender was never even contacted by SYNERGY.

20. When faced with foreclosure sales, several victim homeowners interviewed in this case were told by SYNERGY to file an initial bankruptcy petition to stop the sale of the property. Many of those victim homeowners were instructed by SYNERGY to complete and file bankruptcy petitions in the U.S. Bankruptcy Court as an individual, omitting they had retained SYNERGY's services.

21. Many of the victim homeowners interviewed by law enforcement were elderly low-income individuals who were in desperate financial situations.

22. Client B, a sixty-six-year-old government contract employee, contacted SYNERGY in early 2018, after she was unable to obtain a loan modification from her mortgage company for her house located in the District of Columbia. Client B stated that they were desperate to save her house and believed they were hiring a team of attorneys and industry experts to help her obtain a loan modification. Client B stated that SYNERGY was based in Manassas, Virginia. On May 31, 2018, Client B contacted SYNERGY telephonically and spoke to a representative who emailed Client B an application. The representative set up automatic payments to be debited from Client B's bank account. Client B was told by the representative that the automatic payments had to be set up. During this call, Client B's first payment was debited. Client B stated that they paid a couple of thousand dollars in total to SYNERGY. Client B sent SYNERGY various documents in order for SYNERGY to negotiate a loan modification. Client B then contacted their mortgage company who told Client B that no one from SYNERGY had ever contacted the mortgage company. When Client B attempted to stop

payments to SYNERGY, a representative from SYNERGY told Client B that they signed a contract and that SYNERGY would sue Client B if payments stopped. When Client B told SYNERGY that the mortgage company had not received any communication from SYNERGY, the SYNERGY representative told Client B that the mortgage company was lying. SYNERGY refused to issue a refund to Client B.

23. During this investigation, law enforcement interviewed Employee 1 who is a former employee of SYNERGY. Employee 1 worked for SYNERGY for several months during the scheme as a "closer." As a "closer", it was Employee 1's responsibility to walk potential clients through an eight-page script purportedly written by MARESCA. The script, which had to be memorized by Employee 1, told the potential client that SYNERGY would help save their house from foreclosure. However, a key component of the script was that SYNERGY could not start assisting the client until the retainer was paid. The retainer was set at between $700 and $1,500. Employee 1 stated that these calls would last approximately 45 minutes and the most important information gathered was the potential client's ability to pay the retainer. Employee 1 estimated that SYNERGY ultimately helped 30% of their clients in getting a modification. If the client's case was deemed hopeless, no work was performed by SYNERGY, including not contacting the mortgage holders, but SYNERGY did string the clients along to continue to pay the monthly fees. Employee 1 stated that MARESCA was the person in charge of SYNERGY and had a hands-on approach, including listening in on the phone calls of employees.

### Purchase of Defendant Property with Funds Involved in, and Traceable to, Illegal Activity

24. Capital One Bank ("Capital One") is a financial institution with its deposits insured by the Federal Deposit Insurance Corporation.

25. Sunshine Title & Settlement, Inc. ("Sunshine Title") is a company involved in real estate closings and settlements.

26. Between the years 2016 and 2018, SYNERGY maintained several bank accounts. SYNERGY had an operating account at Capital One (x-0777). MARESCA had signature authority for Account x-0777 which was opened on or about April 6, 2017. Account x-0777 received funds from SYNERGY's clients who falsely believed that SYNERGY was providing legal services to them.

27. On or about May 24, 2018, MARESCA purchased a cashier's check from Capital One drawn against Account x-0777 payable to Sunshine Title in the amount of $150,000. That cashier's check included on its face the following note: "EARNEST DEPOSIT 13159 LAKE HILL DR", which is the defendant property. That cashier's check was then deposited into an account held by Sunshine Title on or about May 31, 2018.

28. On or about August 29, 2018, MARESCA closed on the purchase of the defendant property. At the closing, Sunshine Title credited the earnest money deposit towards MARESCA's purchase of the defendant property.

## VII. COUNTS

### Count One – Forfeiture as Proceeds of Wire Fraud Offense

29. Each of the foregoing allegations is hereby incorporated by reference as if fully set forth herein.

30. Title 18, United States Code, Section 981(a)(1)(C) provides that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of [Title 18]), or a conspiracy to commit such offense" is subject to forfeiture.

8

31. A "specified unlawful activity" as defined in section 1956(c)(7) includes "any act or activity constituting an offense listed in section 1961(1)" of Title 18. Wire Fraud, in violation of 18 U.S.C. § 1343, is an offense listed in section 1961(1).

32. Section 1343 of Title 18 provides that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice" has committed a criminal offense.

33. Section 1349 criminalizes a conspiracy to violate 18 U.S.C. § 1343.

34. The defendant property is subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), as real property, which constitutes or is derived from proceeds traceable to a wire fraud violation.

35. The defendant property is subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), as real property, which constitutes or is derived from proceeds traceable to a wire fraud conspiracy violation.

### Count Two – Forfeiture as Property Involved in a Money Laundering Transaction

36. Each of the foregoing allegations is hereby incorporated by reference as if fully set forth herein.

37. Title 18, United States Code, Section 981(a)(1)(A) provides that "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section . . . 1957 of [Title 18], or any property traceable to such property" is subject to forfeiture.

38. Section 1957 provides that whoever, "knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity" has committed a criminal offense.

39. Section 1957(f)(1) defines "monetary transaction" as the "deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument (as defined in section 1956(c)(5) of this title) by, through, or to a financial institution (as defined in section 1956 of this title), including any transaction that would be a financial transaction under section 1956(c)(4)(B) of this title . . ." Section 1956(c)(6)(A) defines "financial institution" to include "any financial institution, as defined in section 5312(a)(2) of Title 31 . . ." Section 5312(a)(2)(A) defines a financial institution as "an insured bank (as defined in section 3(h) of the Federal Deposit Insurance Act . . .)." Section 5312(a)(2)(U) defines a financial institution as including "persons involved in real estate closings and settlements."

59. Section 1956(h) criminalizes a conspiracy to violate 18 U.S.C. § 1957.

60. The defendant property is subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(A), as real property involved in a transaction in violation of 18 U.S.C.§ 1957.

61. The defendant property is subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(A), as real property involved in a transaction in violation of 18 U.S.C.§ 1956(h).

## VIII. <u>CONCLUSION</u>

**WHEREFORE**, the United States prays that this Court decree that all right, title, and interest in the defendant property be condemned and forfeited to the United States of America, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney for the
District of Columbia

By: *[signature]*
JOHN W. BORCHERT (D.C. Bar No. 472824)
Assistant United States Attorney
VIVIANA I. VASIU (FL Bar No.1011601)
Special Assistant United States Attorney
Fraud Section
555 Fourth Street, N.W.,
Washington, D.C. 20530
(202) 252-7679
john.borchert@usdoj.gov

## VERIFICATION

I, Melissa Lawrence, hereby verify and declare under penalty of perjury that I am a Special Agent with the Federal Bureau of Investigation, that I have read the foregoing Verified Complaint and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 30, 2021

*[signature]* Melissa Lawrence, SA FBI
Special Agent Melissa Lawrence
Federal Bureau of Investigation